CARR *v.* CARR.

138 396
147 658

1. MORTGAGES—FORECLOSURE—LIMITATIONS—REVIEW.

Where, in a suit to restrain the foreclosure of a mortgage, defendant answered by cross-bill for foreclosure, and the court found that limitations pleaded had not run against the mortgage, but granted a decree for only a small part of the alleged debt, from which complainant did not appeal, the decision of the issue of limitations is not reviewable on the defendant's appeal, but is not so conclusive as to require a decree for defendant for the full amount of the debt.

2. WITNESSES—COMPETENCY—TRANSACTIONS WITH DECEASED.

    In a suit by the heirs of a mortgagor to restrain the foreclosure of the mortgage, defendant's testimony that he had received a payment within 15 years in a letter from the mortgagor, which he claimed had been destroyed, was inadmissible, since it related to a matter which, if true, was equally within the knowledge of the deceased mortgagor.

3. SAME—HANDWRITING—KNOWLEDGE OF WITNESS.

    Where the wife of a mortgagee had never seen the mortgagor, and had never seen him write, she was not competent to testify that she saw and read a letter from such mortgagor to her husband, containing a draft for a payment on the mortgage.

4. LIMITATIONS—ACKNOWLEDGMENT OF DEBT.

    A letter from a mortgagor accepting the mortgagee's proposition to settle on the basis of payment of a part of the debt secured by the mortgage is not such a recognition of the entire debt as to prevent the running of limitations against the same.

Appeal from Calhoun; Hopkins, J. Submitted November 15, 1904. (Docket No. 103.) Decided December 7, 1904.

Bill by Mary E. Carr and others against Hugh Carr to restrain the foreclosure of a mortgage. Defendant filed an answer in the nature of a cross-bill asking for the foreclosure of said mortgage. From a decree for defendant for less than the amount claimed, he appeals. Affirmed.

*F. A. Culp* and *Hatch & Anderson*, for complainants.

*Powers & Powers*, for defendant.

MOORE, C. J. December 20, 1873, James Carr made a mortgage to his brother, Hugh Carr, the defendant, for the sum of $1,400, due seven years from date, with interest at 10 per cent. per annum. April 15, 1902, James Carr died intestate, leaving the complainants, Mary E. Carr, his widow, William Carr, his son, and Eva Elwell, a daughter, as his only heirs surviving. November 20, 1902, defendant commenced foreclosure of the mortgage

by newspaper advertisement. January 24, 1903, complainants filed this bill, obtained an injunction restraining the foreclosure proceedings at law, alleging the mortgage was barred by the statute of limitations, and praying that it be declared void and be discharged of record.

Defendant answered, denying the mortgage was barred by the statute of limitations, and by way of answer in the nature of a cross-bill asked that the mortgage be foreclosed in accordance with the usual practice of foreclosing mortgages in chancery.

The case was heard upon pleadings and proofs in open court. A decree was made dismissing the complainants' bill, and granting a foreclosure on defendant's cross-bill for the sum of $550, with interest at 10 per cent. from November 29, 1901, with costs in favor of the defendant. The defendant claims there is due upon the mortgage $5,694, and has brought the case to this court by appeal. The complainants have not appealed.

The record shows that about 1876 Hugh Carr returned to Ireland, and has never been back to this country. It was the claim of complainants that a day or two prior to his leaving James Carr paid to him $500 or $700 to apply on the mortgage; that October 19, 1881, he sent him $100 for the same purpose; and that he never afterwards made any payment, and that the statute of limitations had run against the mortgage. It is the claim of defendant that only one payment has ever been made to him, and that was of $100, made about 14 years before the deposition of Hugh Carr was taken to be used upon the trial. In his disposal of the case the trial judge said he did not think the statute of limitations had run against the mortgage, and in his opinion said, among other statements:

"The testimony as to the number and amount of the payments made upon the mortgage are conflicting, and, excepting as to one payment of $100, made in 1881, unsatisfactory. It appears from the evidence that the defendant went to Ireland in 1876, and has never returned to this country. It is also shown that he made numerous

requests by letter from time to time for payment on the mortgage debt, some of these requests being urgent and threatening. At last, on September, 1901, he made what he designates his final offer to accept $550 in full payment of the debt, at the same time stating that this amount is less than a third of what is his due, and threatening, if this amount is not paid, he will proceed to have the mortgage foreclosed without further delay. James Carr, under date of November 29, 1901, replies to this letter, saying that he accepts the offer, and asks to have the mortgage, with a proper discharge, sent to some one in this country representing the defendant, with whom the business can be transacted. This arrangement was not carried out, though James Carr, before his death, which occurred April 15, 1902, wrote other letters urging the defendant to send on the mortgage, and agreeing to pay the amount specified in defendant's letter of Nov. 29, 1901."

He thought it proper this agreement should be enforced, and made the decree as before stated.

Section 9725, 3 Comp. Laws, reads:

"No suit or proceeding shall be maintained to foreclose a mortgage on real estate, either at law or in equity, unless commenced within fifteen years from and after such mortgage shall become due and payable, or within fifteen years after the last payment was made on said mortgage: *Provided, however*, that this act shall not be construed to apply to mortgages which have been due fifteen years or more, or the last payment upon which was made fifteen years or more prior to the passage of this act, but in all such cases no suit or proceedings shall be maintained to foreclose the same unless commenced within five years after this act shall take effect."

The defendant insists that, as the trial judge found the statute of limitations had not run against the mortgage, and as complainants have not appealed, that question cannot now be considered by this court. This position undoubtedly states the general rule, but defendant is seeking affirmative relief by an answer in the nature of a cross-bill. He is not content with the relief granted to him in the court below. He says, instead of having a decree for something more than $500, he should have one for more

than $5,000. He claims this amount by virtue of a mortgage, which, upon its face, was due nearly 22 years before he began foreclosure proceedings, which mortgage he could not, by reason of the statute, foreclose at that date, unless he could show a payment had been made thereon within 15 years of the commencement of the foreclosure. He undertakes to make this showing by testimony. This showing is disputed by complainants, and is an important element in the case. We agree with the trial judge that the testimony as to the number and amount of the payments is conflicting, but we think the claim of complainants in that regard is supported by a very clear preponderance of the testimony. The testimony all discloses that James Carr was an unfortunate victim of the drink habit, and that he wasted the proceeds of his farm. A receipt is introduced in evidence from the bank showing that October 19, 1881, James Carr, with $100, bought a draft in favor of Hugh Carr for £20 8s. drawn on the Munsted Bank, Dublin. Mrs. Carr swears she saw her husband with the money, previous to going to Battle Creek for the draft, which was to be inclosed in a letter addressed to the defendant, which letter she saw; and that afterwards her husband received a receipt from his brother for the money, and a letter, both of which she saw and read, but neither of which she was able to find after his death. Hugh Carr, in his deposition, testified he received $100 from James Carr, but that it was about 14 years before his deposition was taken, and that he never received any other sum from him to apply on the mortgage. We shall have more to say about this testimony later.

On the 23d of January (blank year) Hugh Carr wrote his brother:

"i think that you might be ashamed all this time and not paid any if you done any thing you might a had every cent of it payed now twelve or thirteen years and never tried to pay any thing, their must be something the matter you dont care one straw how i get on now look at the interest and all you surely could have paid the interest every

year, but i think you want to pay nothing and if you do not pay some and send me some before May i will go down to the Queens Counceler to Belfast and give it to him, and if you have any wit for yourself and for me you will save the trouble and expense, i will be humbugged no longer, if you had done any thing, but you would do nothing there is nothing fare about you."

On January 28, 1892, he wrote him:

"James you spoke of money matters and I think that it was near time in 15 years that you could do nothing you might had every farthing paid and could if there had not been something wrong you did not care how i got along if you were all right, sometime i thought of going to Belfast and giving it into the hand of the Queens Counceler, and other times i thought of going over to you but you spoak as you were going to give me some, if you send me the 16 hundred and send me fifty pounds a year i will forgive you all the interest and when you count that up that is a good deal."

In our opinion, these letters are utterly inconsistent with the idea that a payment had been made about the year 1889 as testified to by Hugh Carr.    Hugh Carr's testimony is supported by the testimony of his wife to the effect that she saw the draft, and read the letter in which it came. The time when this occurred is not stated by defendant, but is said to have been about 14 years before their depositions were taken.    Both these witnesses also testified that James had frequently acknowledged the debt in letters which he sent.    None of these letters were produced, and it was claimed they were destroyed.    The testimony of Hugh Carr was incompetent under the statute.    It related to matters which, if true, must have been equally within the knowledge of his dead brother.    His wife never saw James Carr, and never saw him write.    She did not possess the requisite knowledge to enable her to testify to his handwriting.    Taking the record as we find it, we think it clear the last payment on this mortgage was made in 1881.

It is said, however, that the letters written by James Carr are sufficient to take the mortgage out of the oper-

ation of the statute; citing *Rumsey* v. *Settle's Estate*, 120 Mich. 372. The only letters written by James Carr which are introduced in evidence which refer to the mortgage are in reply to correspondence which began in September, 1901, in which Hugh wrote:

" Now James i give this last chance if you send me one hundred pounds and gives John Mcomb ten pounds i forgive you all the rest, that is not one third you owe and if not i will fight to the end."

In the following November James wrote:

" wel hugh you made me a proposal to settle up with you and i have made maind for to myself except if you send the mortgage hear as soon as you have a mind to and have it already for discharge and you will have your money and that will end it up send it to John Kerr or any lawyer or any one you have a choice and i will try and settle up with you and John Mcomb at once and do it as quick as you can for i want it done with as i dont nowe how soon something may happen so do it right off."

Then followed other correspondence relating to a settlement upon the basis of £100, which correspondence was terminated by the death of James. Even if the promise to pay in writing would take the case out of the statute, it will be noted there was no such recognition of the entire amount claimed and a promise to pay it as would prevent the running of the statute.

As the complainants have not seen best to appeal from the amount of the decree, it will be affirmed, with costs of this court in favor of complainants.

The other Justices concurred.